**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710 F
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ZACHARY BABKA and DENISE FRENCH, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ST IP HOLDINGS LP and UNITED LEGWEAR COMPANY, LLC d/b/a UNITED LEGWEAR & APPAREL CO.

Defendants.

Case No. 4:26-cv-01702-JST

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNITED LEGWEAR COMPANY, LLC'S MOTION TO DISMISS PLAINTIFF DENISE FRENCH'S FIRST AMENDED COMPLAINT**

Date: December 10, 2026
Time: 2:00 p.m.
Judge: Hon. Jon S. Tigar
Location: 6 – 2nd Floor

# TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION .......... 1

LEGAL STANDARD .......... 2

ARGUMENT .......... 3

I. PLAINTIFF DID NOT CONSENT TO DEFENDANT'S CONDUCT, NOR CAN CONSENT BE DECIDED AT THIS STAGE OF LITIGATION .......... 3

II. DEFENDANT UNITED LEGWEAR'S CONDUCT FALLS SQUARELY WITHIN THE ECPA'S CRIME-TORT EXCEPTION .......... 5

III. PLAINTIFF STATES A CLAIM UNDER CIPA § 632 .......... 7

A. Section 632 Permits Derivative Liability .......... 7

B. Plaintiff's Communications With The Website Were Confidential .......... 8

IV. PLAINTIFF STATES A CLAIM UNDER CIPA § 638.51 .......... 10

V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY .......... 12

CONCLUSION .......... 14

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2, 3, 12

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 5, 6

*Brown v. Google LLC*,
685 F.Supp.3d 909 (N.D. Cal. 2023) ........ 9

*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D. Cal. 2021) ........ 9

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 9

*Casillas v. Six Flags Ent. Corp.*,
812 F. Supp. 3d 1016 (C.D. Cal. 2025) ........ 2, 10, 11, 13

*Correia v. Lulu & Georgia, Inc.*,
2026 WL 2343093 (S.D. Cal. Aug. 12, 2026) ........ 2, 9, 10

*Doe v. Talkiatry Mgmt. Servs., LLC*,
816 F. Supp. 3d 1206 (C.D. Cal. 2026) ........ 11

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 9, 11

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ........ 14

*Gabrielli v. Haleon* US *Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ........ 2, 10, 11

*Gabrielli v. Motorola Mobility LLC,*
2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ passim

*Gianne v. Accor Mgmt. US Inc.*,
2026 WL 925522 (C.D. Cal. Mar. 31, 2026) ........ 7

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 29, 2026) ........ 10

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1, 865 P.2d 633 (1994) ........ 13

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023)........................................................................ 3

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ......................................................................... 2, 9, 12, 14

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019)................................................................................. 3

*In re Meta Pixel Tax Filing Cases*,
793 F.Supp.3d 1147 (N.D. Cal. 2025)............................................................................... 11

*J.S. v. Spring Fertility Holdings, LLC,*
2026 WL 1483490 (N.D. Cal. May 27, 2026)............................................................. passim

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026)......................................................................... 13, 14

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ............................................................................................. 3

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) ........................................................................ 6

*Matera v. Google, Inc.*,
15-cv-04062-LHK, 2016 WL 8200619 (N.D. Cal. 2016)................................................. 11

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) ........................................................................ 9

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026).............................................................. 10, 12

*Perez v. Romantix Online, Inc.*,
2026 WL 1802589 (N.D. Cal. June 23, 2026)................................................................ 5, 14

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ................................................................................. 6

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025)......................................................................... 5

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)................................................................... 7, 10, 13

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026)......................................................................... 13, 14

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024)............................................................................... 9

*Smith v. Rack Room Shoes, Inc.*,
(“Smith I”), 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025)........................................... passim

*Smith v. Rack Room Shoes, Inc.*,
(“Smith III”) 2026 WL 183852 (N.D. Cal. Jan. 23, 2026)........................................... 2, 6

*Smith v. Rack Room Shoes, Inc.(*,
(“Smith II”), 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025)........................................... 2, 5, 6, 8

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013)........................................... 2, 3

*Sussman v. Am. Broad. Co., Inc.*,
186 F.3d 1200 (9th Cir. 1999)........................................... 5

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024)........................................... 9, 14

*User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)........................................... 3

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023)........................................... 7

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011)........................................... 7

**STATUTES**

Cal. Pen. Code § 31........................................... 7

Cal. Pen. Code § 631........................................... 10, 11

Cal. Pen. Code § 631(a)........................................... 11

Cal. Pen. Code. § 638.50(b)........................................... 10

Cal. Pen. Code § 638.51........................................... 10, 11

Cal. Pen. Code § 638.51(a)........................................... 11

## INTRODUCTION[1]

Plaintiffs Zachary Babka and Denise French, individually and on behalf of all others similarly situated, seek to represent a putative class of individuals who, like them, utilized the website, www.stance.com (the "Website") to search for and purchase apparel (i.e. socks, underwear, t-shirts, etc.) and had their communications intercepted and disclosed to various third parties without their knowledge or consent. First Amended Complaint (ECF No. 20) ("FAC").[2]

Stance is an American sock, underwear, and t-shirt brand founded in 2009. FAC ¶ 2. Defendants ST IP Holdings LP and Defendant United Legwear have sold and marketed Stance products through the Website at various points in time. FAC ¶¶ 2, 4, 11–14. When Plaintiff French ("Plaintiff") accessed the Website in November of 2025, Defendant United Legwear Company, LLC ("Defendant" or "United Legwear") presented her with a cookie banner that seemingly gave her (and other Website users) the opportunity to accept, reject, or limit tracking cookies. FAC ¶¶ 26–33, Figs. 3–4. Defendant represents, regardless of the choice made by consumers, that any tracking of their activity on the Website was to be done anonymously. FAC ¶ 30, Fig. 4. However, the choices presented by Defendant were illusory. Defendant tracks consumers' online activity in an identifiable way despite its explicit representations not to do so. Despite Defendant's affirmative representations of anonymized tracking, Defendant intercepted and disclosed Plaintiff's personally identifiable information and product purchase details to third-parties Meta Platforms, Inc. ("Meta") and Google, LLC ("Google") (together, the "Third Parties"). FAC ¶¶ 8–10, 26–33, 166–181. Such disclosures were not made to provide Plaintiff with products or services, but rather to enrich Defendant and Third Parties through targeted advertising. Such conduct is unlawful under both state and federal law. FAC ¶¶ 41–60, 209–272.

---

[1] Plaintiff Babka's claims arise from conduct from Defendant ST IP Holdings LP's operation of the Website. Defendant ST IP Holdings LP has not yet appeared in this action, such that Plaintiff Babka intends to seek default judgment.

[2] Plaintiff French alleges claims against Defendant United Legwear Company, LLC for its operation of the Website. The Motion (ECF No. 24) and this Opposition relate solely to Plaintiff French's claims against Defendant United Legwear.

When Defendant illegally intercepted and disclosed users' communications to Meta and Google in violation of the ECPA, CIPA, and the California Constitution, it allowed the Third Parties to collect and use this private information, thus depriving users of their right to control it. FAC ¶¶ 8–10, 14, 26–33, 41–43, 166–190. This was no accident, Defendant deliberately employed the Google and Meta tracking technologies to bolster its advertising revenue by allowing it to harvest information, build robust consumer profiles, and enable advertisers like Defendant to better target users for advertising purposes. *See e.g.* FAC ¶¶ 1–4, 68–101 (Meta), 115–151 (Google), 166–188. The Ninth Circuit recognized the harm such tracking occurs in *In re Facebook, Inc. Internet Tracking Litigation*. *See generally* 956 F.3d 589 (9th Cir. 2020).

Rather than cure its privacy violations, Defendant moves to dismiss Plaintiff's First Amended Complaint. *See generally* Defendant United Legwear's Motion to Dismiss (ECF No. 26) ("MTD"). However, the majority of Defendant's arguments have been squarely rejected by a number of courts within the Ninth Circuit. *Smith v. Rack Room Shoes, Inc.* ("*Smith I*"), 2025 WL 1085169, *1–5 (N.D. Cal. Apr. 4, 2025) (consent, CIPA §§ 631–32, invasion of privacy); *Smith v. Rack Room Shoes, Inc.*("*Smith II*"), 2025 WL 2210002, *4–6 (N.D. Cal. Aug. 4, 2025) (ECPA); *Smith v. Rack Room Shoes, Inc.* ("*Smith III*") 2026 WL 183852, *1–4 (N.D. Cal. Jan. 23, 2026) (ECPA, CIPA § 631 (use)); *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016, 1028–33 (C.D. Cal. 2025) (ECPA, CIPA §§ 631, 638.51, invasion of privacy); *Gabrielli v. Haleon US Inc.* ("*Haleon*"), 815 F. Supp. 3d 852, 870–72 (N.D. Cal. 2025) (CIPA §§ 631, 638.51, invasion of privacy); *Gabrielli v. Motorola Mobility LLC* ("*Motorola*"), 2025 WL 1939957, *9–12 (N.D. Cal. July 14, 2025) (Tigar, J.) (CIPA §§ 631, 638.51, invasion of privacy); *Correia v. Lulu & Georgia, Inc.*, 2026 WL 2343093, *4–7 (S.D. Cal. Aug. 12, 2026) (CIPA §§ 631–32); *J.S. v. Spring Fertility Holdings, LLC* ("*Spring Fertility*"), 2026 WL 1483490 (N.D. Cal. May 27, 2026) (consent). This Court should do the same.

**LEGAL STANDARD**

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id*. (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT

### I. PLAINTIFF DID NOT CONSENT TO DEFENDANT'S CONDUCT, NOR CAN CONSENT BE DECIDED AT THIS STAGE OF LITIGATION

Defendant argues "[e]ach of French's claims either requires the absence of consent or is independently defeated by consent." MTD at 9. Not so.

"For a defendant to show consent through disclosures, the disclosures must 'explicitly notify' users of the practice at issue and must have only one plausible interpretation." *Spring Fertility*, 2026 WL 1483490, at *2 (citing *In re Facebook, Inc., Consumer Priv. User Profile Litig*., 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019); *see also In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 190 (N.D. Cal. 2019) ("Consent is only effective if the person alleging harm consented to 'the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent.")). Crucially, consent is "generally limited to the specific conduct authorized." *Smith I*, 2025 WL 1085169, at *1.

Defendant misunderstands Plaintiff's allegations as relying on whether "whether she clicked 'accept' or 'deny.'" MTD at 9. Not so. Defendant's reliance on the cookie banner is self-defeating because the disclosures Defendant points to say the opposite of what Defendant did. Plaintiff's allegations arise from the reasonable expectation ***Defendant*** created, by warranting targeting cookies

"do not store directly personal information . . . irrespective of whether a consumer accepts or rejects [them]" and then exceeding the scope of that consent by intercepting and disclosing to Third Parties Plaintiff and class members personally identifiable information and purchase information despite a reasonable expectation in *anonymized* tracking. FAC ¶ 30; *see also* FAC ¶¶ 8–9, 13–14, 178; Fig. 4. Simply put, the FAC alleges that Defendant's cookie banner representation is false: Defendant disclosed French's "first name, last name, email, and partial address" to Google (FAC ¶ 174, Fig. 11), and disclosed hashed email, first name, and last name to Meta (FAC ¶ 177, Fig. 12)—i.e., directly personal information, none of which was anonymized by hashing. FAC ¶¶ 189–90.

*Spring Fertility* is instructive. There the court explained where the plaintiff "alleges the Cookie Policy also contains a conflicting representation—that its targeting cookies 'do not store directly personal information, but are based on uniquely identifying your browser and internet device" there was "a reasonable expectation that their personally identifying data would not be shared" such that consent was a question of fact that could not be resolve on a motion to dismiss. *Spring Fertility*, 2026 WL 1483490, at *2 ("[t]he FAC now specifically alleges that J.S. had a ***reasonable expectation in anonymized data sharing.***"). Likewise, in *Smith I*, the court reasoned "a reasonable user would not interpret the Rack Room privacy policy as authorizing the practices at issue" where the policy represented Rack Room "collects information through cookies and beacons . . . but none of the information collected through cookies or beacons is personally identifiable." *Smith I*, 2025 WL 1085169, at *2. Accordingly, the *Smith I* court denied "motion to dismiss all claims based on consent." *Id.* at *3. This Court should follow *Spring Fertility* and *Smith I* and deny the motion to dismiss.

Indeed, any purported consent to tracking is undercut by Defendant's own disclosures affirmatively representing the opposite of the conduct alleged—foreclosing any inference that Plaintiff could have consented to the unlawful conduct. *See* FAC ¶ 2 ("Defendants warrant that the targeting cookies they utilize for advertising purposes do not store personal information"); ¶ 10 ("Despite Defendant's representations of confidentiality, Plaintiff French's communications during this visit were intercepted and disclosed to Third Parties, including communications that contained

Plaintiff French's PII and information about her Website purchases "); ¶ 30 (Defendant warrants "targeting cookies 'do not store directly personal information'").

Defendant's principal authority, *Perez v. Romantix Online, Inc.*, does not compel a different result. 2026 WL 1802589 (N.D. Cal. June 23, 2026). There, the court's reasoning turned on the plaintiffs' failure to allege they "*did not consent* to the collection and disclosure of their personal data." *Id.* at * 2. Here, unlike *Perez*, the FAC is replete with allegations Plaintiff did not consent to the disclosures at issue (*See e.g.* FAC ¶¶ 2, 10, 30, 101, 151, 166, 171–72, 178, 180–81), nor could she, as Defendant expressly warranted tracking by targeting cookies was anonymous. FAC ¶¶ 26–33; *accord Spring Fertility*, 2026 WL 1483490, at *2; *Smith I*, 2025 WL 1085169, at *1–3; *Motorola*, 2025 WL 1939957, at *8 (Tigar, J.).

Moreover, because Defendants consent argument fails for the reasons set forth herein, and Defendant's sole basis for its motion to dismiss Plaintiff's CIPA § 631 is consent, Defendant has forfeited, for purposes of this motion, any other challenge to CIPA §631 such that the Court should not entertain new § 631 arguments raised for the first time on reply.

## II. DEFENDANT UNITED LEGWEAR'S CONDUCT FALLS SQUARELY WITHIN THE ECPA'S CRIME-TORT EXCEPTION

Defendant does not dispute Plaintiff alleges the elements of an ECPA violation, rather, its sole argument is that it was a party to the communications and that Plaintiff cannot satisfy the crime-tort exception. MTD at 10–12. That does not defeat Plaintiff's claim under the ECPA.

The crime-tort exception applies "where the 'communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Smith II*, 2025 WL 2210002, at *4 (citing *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *4 (C.D. Cal. Jan. 13, 2025); *Sussman v. Am. Broad. Co., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)).

Here, Plaintiff alleges that Defendant intercepts and discloses communications to Third Parties for a number of unlawful and tortious purposes including "invasion of privacy[] and associating the content of Plaintiffs' and Class members' electronic communications with preexisting consumer profiles and using the contents of their electronic communication." FAC ¶ 226; *see e.g.* FAC ¶¶ 68–101, 166–73, 175–78, Fig. 12 (Meta); FAC ¶¶ 115–151, 166–73, 174, Fig. 11 (Google). A number of courts have recognized that "[t]he association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies [the crime-tort] exception," because it "violate[s] state law, including the CDAFA, intrusion upon seclusion, and invasion of privacy". *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021); *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) ("contrary to Lemonaid's argument that any alleged interception was for Lemonaid's sole benefit and thus still within the party exception, Plaintiffs allege that Google and Facebook benefited from this interception by using the information to sell ads to other third-party advertisers."); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (crime-tort exception applies "even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims").

An additional basis for the application of the crime-tort exception is Defendant's disclosure of Plaintiff's "personally identifiable information for advertising, in contradiction the commitments it made" in its cookie banner. *Smith II*, 2025 WL 2210002, at *5 ("Plaintiffs allege that Rack Room intended to disclose its customers' personally identifiable communications—which it had promised not to collect or use—to third parties so that it could deliver targeted ads to its customers. Rack Room's alleged disclosure and use of Plaintiffs' personally identifiable information for advertising, in contradiction the commitments it made in its privacy policy, can plausibly constitute a further invasion of privacy beyond the act of intercepting the information alone."); *Smith III*, 2026 WL 183852, at *2 ("Rack Room contends that the Wiretap Act's crime-tort exception does not apply, because: (1) only the third parties' purpose should be considered and not Rack Room's; (2) Plaintiffs fail to allege an independent tortious purpose separate from the interception itself; and (3) where a

defendant's primary motivation is to make money, the exception is inapplicable. Each of these arguments fails . . . ").

Here, Defendant was legally obligated to honor its privacy representations when using or exploiting its customers' personal information. Despite that obligation, Defendant chose to assist Third Parties with intercepting electronic communications "in a manner that exceeds what Defendant[] promised Plaintiff and Class members on [its] Website." FAC ¶ 226. By doing so, Defendant facilitated the interceptions for a tortious and unlawful purpose. Furthermore, as this Court recognized in *Riganian*, "commercially exploiting unlawfully obtained information is [not] 'licit' merely because it is profitable. Put simply, committing a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the reason for the former)." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) (Tigar, J.).

## III. PLAINTIFF STATES A CLAIM UNDER CIPA § 632

### A. Section 632 Permits Derivative Liability

Defendant argues Plaintiff's § 632 claim must fail because "Section 632 . . . contains no provision imposing derivative liability." MTD at 12. Not so.

Although not explicit, Section 632 allows for derivative liability. "All persons concerned in the commission of a crime . . . or aid and abet in its commission . . . are principals in any crime so committed." Cal. Penal Code § 31. "Nothing in the language of CIPA explicitly limits the application of section 31 . . . . In civil lawsuits for violations of section 632, courts have therefore imputed the civil liability standard for aiding and abetting to determine the scope of derivative liability." *Smith I*, 2025 WL 1085169, at *5. Thus, Section 31, when applied to CIPA § 632, "allows for [a defendant who aids and abets another] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *accord Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023); *Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *8 (C.D. Cal. Mar. 31, 2026).

In *Smith II*, the court explained "to establish liability, [the defendant] must have knowledge of [the Third Parties'] breach of duty and must have provided substantial assistance." *Smith II*, 2025 WL 1085169, at *5. The court denied the motion to dismiss the CIPA § 632 claim reasoning:

> Plaintiffs adequately allege that Rack Room knew that Meta and Attentive's data collection had the purpose of tracking individually identifiable user habits, ***despite provisions of Rack Room's policy that created a contrary expectation.*** Furthermore, ***the allegation that Rack Room knowingly and affirmatively embedded Meta and Attentive's code into its website is sufficient to plead substantial participation***.

*Id.* at *5.

Here, Plaintiff plausibly alleges Defendant is liable as an eavesdropper under Section 632 under a theory of derivative liability. *See e.g.* FAC ¶ 3 (Defendant "enable[s] Third Parties to eavesdrop on communications sent and received by Plaintiffs and Class Members on the Website"); FAC ¶ 86 ("Defendant[] intentionally configured the Tracking Technologies installed on the Website to capture both the 'characteristics' of individual's communications with its Website . . . and the 'content' of these communications . . ."); ¶ 171 ("United Legwear intentionally configured the Tracking Technologies installed on its Website to capture both the 'characteristics' of individual's communications with its Website (their IP addresses, User-IDs, identifiers, and emails) and the 'content' of these communications (the buttons, links, pages, and tabs they click, and view related to the shopping and products sought from United Legwear)"); ¶ 172 ("United Legwear installs these Tracking Technologies despite its understanding that its customers reasonably anticipate their identifiable information to be kept confidential and undisclosed to Third Parties. This installation contradicts United Legwear's promise to keep PII confidential.").

### B. Plaintiff's Communications With The Website Were Confidential

Defendant also argues Plaintiff "cannot plausibly allege" that Plaintiff had "an *objectively reasonable expectation* that the conversation is not being overheard or recorded." MTD at 13.

Defendant misapprehends both law and fact by arguing there is a general "presumption that internet communications do not reasonably give rise to an expectation of privacy" as a basis for

Plaintiff's claims. MTD at 13 (citing *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014)).

"California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632." *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (quoting *Brown v. Google LLC*, 685 F.Supp.3d 909, 938 (N.D. Cal. 2023)). Simply put, "Section 632 makes no exception on its face for communications over the Internet, or in the 'Internet Age,' meaning that there is no requirement that Plaintiff allege something 'unique' about her particular Internet communications in order to make them private/confidential." *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *11 (C.D. Cal. Oct. 4, 2024). To the contrary, "[C]ourts have found users have a reasonable expectation of privacy if a company states it will not collect your information in certain spaces or while searching in a protected mode." *Correia*, 2026 WL 2343093, at *6 (citing *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024); *Smith I*, 2025 WL 1085169, at *5; *In re Facebook*, 956 F.3d at 601–03; *Brown v. Google LLC*, 685 F.Supp.3d 909, 937-39 (N.D. Cal. Aug. 7, 2023) (finding plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode); *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 630 (N.D. Cal. 2021) (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's representations that it would not receive user data while they were not synced)).

Under § 632, a communication is confidential if the individual has "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002). Where—as is the case here—the Website expressly warrants targeting cookies 'do not store directly personal information' there is an objectively reasonable expectation in *anonymized* data sharing. FAC ¶ 30, Fig. 4; *accord Spring Fertility Holding*, 2026 WL 1483490, at *2; *Correia*, 2026 WL 2343093, at *6. Plain and simple.

*Smith I* is instructive. There, the court held "Plaintiffs have adequately alleged a confidential communication," when their ***online shoe shopping habits*** were tracked because the website's privacy policy said it would not be tracked in an identifiable manner. "Plaintiffs have alleged that

they had a reasonable expectation of privacy in their personally identifiable [shoe shopping] browsing history as a result of the disclosures and promises in Rack Room's privacy policy, which can be read to promise that third parties would not intercept or use said bundled information. This is sufficient to satisfy the confidentiality requirement." *Id.* The same is true here. Plaintiff alleges she had an expectation her online shopping session would not be tracked based on Defendant's own representations. FAC ¶¶ 10, 30, Fig. 4.

Accordingly, Plaintiff has sufficiently alleged her communications were confidential under CIPA § 632(a).

## IV. PLAINTIFF STATES A CLAIM UNDER CIPA § 638.51

Defendant's argument as to CIPA § 638.51 is that because the FAC's "detailed allegations concern contents, not routing or addressing information," the Tracking Technologies cannot be pen registers. MTD at 15. Not so.

CIPA defines a pen register as a as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code. § 638.50(b). A majority of courts, including this one, recognize the term pen register is not limited to telephonic devices and may encompass the internet tracking devices. *Motorola*, 2025 WL 1939957, at *1; *Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *8 (N.D. Cal. May 21, 2026); *Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *3 (N.D. Cal. Jan. 29, 2026) (same); *Casillas*, 812 F. Supp. 3d 1016, 1032 ("the Court finds Cal. Pen. Code § 638.51 is not limited to telephone communications"); *Haleon*, 815 F. Supp. 3d at 871–72 ("the Court cannot ignore the expansive language in the California Legislature's chosen definition [of pen register], which is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e. "device or process")); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1094–98 (N.D. Cal. July 18, 2025) (same).

Crucially, a majority of courts have permitted allegations brought under CIPA § 631 and § 638.51 to coexist at the motion to dismiss stage. *See e.g. Haleon*, 815 F. Supp. 3d at 872 ("[The

defendant] asserts, in passing, that Gabrielli's Section [638.51(a)] pen register claim cannot coexist with his Section 631(a) wiretapping claim because pen registers 'do not record contents,' but wiretaps do . . . . This argument would lead to the conclusion that any pen register that also recorded the 'contents' of users' information would no longer fall under the protection of Section 638.51(a) of CIPA. That cannot have been the Legislature's intent."); *Doe v. Talkiatry Mgmt. Servs., LLC*, 816 F. Supp. 3d 1206, 1210–12 (C.D. Cal. 2026) (dismissing the defendant's argument that alleging interception of "contents" "foreclose[s] [Plaintiff] from establishing that Meta Pixel fits the definition of a pen register."); *Casillas*, 812 F. Supp. 3d at 1030–33; *Motorola*, 2025 WL 1939957, at *10–12.

*Haleon* is instructive. The court adopted Judge Pitts reasoning from *In re Meta Pixel Tax Filing Cases*, 793 F.Supp.3d 1147 (N.D. Cal. 2025) where he explained:

> CIPA, intended "to protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society. This philosophy appears to lie at the heart of virtually all the decisions construing [CIPA]." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 [, 117 Cal.Rptr.2d 574, 41 P.3d 575] (2002) (cleaned up). Recognizing this intent, the California Supreme Court "has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.' " *Matera v. Google, Inc.*, 15-cv-04062-LHK, 2016 WL 8200619, at *19 (N.D. Cal. 2016) (quoting *Flanagan*, 27 Cal. 4th at 775, 117 Cal.Rptr.2d 574, 41 P.3d 575).

*Haleon*, 815 F. Supp. 3d at 872. Accordingly, the *Haleon* court dismissed the defendant's argument that pen register and § 631 claims cannot coexist because that "argument would lead to the conclusion that any pen register that also recorded the 'contents" of users' information would no longer fall under the protection of Section 638.1(a) of CIPA. That cannot have been the Legislature's intent." *Id*. This Court should do the same.

Defendant's argument that Plaintiff failed to allege "'the tracking technologies' alleged recording or decoding of plaintiff's IP address and 'Device Metadata'" is belied by the allegations in the FAC. *Compare* MTD at 15; *with* FAC ¶¶ 50–56 (pen registers, generally), ¶¶ 61–67 (tracking technologies, generally), ¶ 76 (Meta Cookies disclose IP address), ¶¶ 77–87 (Meta Cookies identify

users and browsers), ¶ 119 (Google persistent identifiers), ¶ 123 (Google's collection of IP addresses and device info), ¶129–136 (Google identifiers, device information, IP and browser fingerprinting), ¶ 184 ("This allowed the Third Parties—through their respective Technologies—to collect Plaintiffs' and Class Members' IP addresses and Device Metadata and pervasively track them across the Internet."), ¶ 185 ("In addition to the public IP address, key elements include the user-agent string (browser, operating system, and device type) and device capabilities such as supported image formats and compression methods. Persistent identifiers including the c_user . . . cookie values, ensure users can be tracked even after clearing standard session data like cookies . . . Combined, these elements form a detailed, unique fingerprint that allows for cross-site tracking and behavioral profiling."); ¶¶186–88.

At a minimum, these allegations give rise to a plausible inference that the cookies operated on the Website qualify as pen-registers sufficient to survive dismissal; to require anything further would reinstate "the hypertechnical, code-pleading regime" Rule 8 is designed to displace. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY

Defendant's remaining argument for dismissal is that (1) Plaintiff "cannot establish a legally protected privacy interest" (MTD at 16) and (2)"the alleged conduct was not a serious or egregious invasion of privacy." Not so.

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601. Plaintiff satisfies both elements.

***First,*** "[w]hether a user had a reasonable expectation of privacy is a mixed question of fact and law. . . Courts consider whether a defendant gained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Ortiz v. Foris Dax, Inc.,* 2026 WL 1430720, at *2 (N.D. Cal. May 21, 2026) (cleaned up). The Ninth Circuit has already settled the issue. "[A] user has a reasonable expectation of privacy as to online activity that a website affirmatively represents that it will not track." *Id.* at *3 (citing *In re Facebook*, 956 F.3d, 589, 601). Here,

Defendant promises customers "targeting cookies 'do not store directly personal information' . . . . irrespective of whether a consumer accepts or rejects cookies", such that customers of Defendant, including Plaintiff, had a reasonable expectation of privacy in anonymized tracking. FAC ¶¶ 30, 172 ("United Legwear installs these Tracking Technologies despite its understanding that its customers reasonably anticipate their identifiable information to be kept confidential and undisclosed to Third Parties. This installation contradicts United Legwear's promise to keep PII confidential."). As discussed *supra*–Section I, this is sufficient to establish Plaintiff had an objectively reasonable expectation of privacy in ***anonymized tracking***. *See e.g.* FAC ¶¶ 3, 9–10, 13–14, 30, 101, 151, Fig. 4; *Spring Fertility*, 2026 WL 1483490, at *2; *Smith I*, 2025 WL 1085169, at *3 ("This is the specific type of information that Plaintiffs plausibly alleged Rack Room promised would not be collected when it stated that 'none of the information collected through cookies or beacons is personally identifiable.' Therefore, Plaintiffs have pled the first prong of an invasion of privacy claim."); *Riganian*, 791 F. Supp. 3d 1075, 1085–89 (Tigar, J.); *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016, 1030 (C.D. Cal. 2025) (same).

***Second***, whether conduct is "highly offensive" is fact-bound and turns on "the degree of the intrusion, the context, conduct, and circumstances surrounding the intrusion, as well as the intruder's motives and objectives, the setting into which he or she intrudes, and the expectations of those whose privacy is invaded." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 3, 865 P.2d 633 (1994). "Deceit can be a kind of 'plus factor' in determining whether an action is highly offensive." *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 917 (N.D. Cal. 2026). Here, Plaintiff alleges far more than the generic analytics. She alleges Defendant deliberately represented targeting cookies "do not store directly personal information," and then still configured the tracking technologies to share her personally identifiable information and purchase information. FAC ¶¶ 9–10, 26–30, 166–181, Figs. 4, 11–12. A jury could reasonably conclude this is an egregious breach of social norms. *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 865 (N.D. Cal. 2026) ("engaging in unauthorized tracking and data collection, allowing it to compile detailed profile of each plaintiff's online web browsing activity—including highly sensitive browsing activity—tied to their email addresses and other

personal identifiers is actionable.") (cleaned up); *Motorola*, 2025 WL 1939957, at *10 ("it is premature to dismiss Gabrielli's claims based on a determination of how offensive or serious the privacy intrusion is."); *Shah v. MyFitnessPal, Inc.,* 824 F. Supp. 3d 906, 917–18 (N.D. Cal. 2026).

Nor does Defendant's case law compel a different result as **none** of its cases involve an affirmative representation of anonymous tracking. In fact, Defendant's reliance on *Thomas v. Papa Johns Int'l, Inc.* cuts against Defendant's position as the court recognized., "courts have found users have a reasonable expectation of privacy if a company states it will not collect your information . . . ." 2024 WL 2060140, at *2; *see also Perez*, 2026 WL 1802589, at *3 ("a website operator may create an expectation of privacy . . . ."). Accordingly, Plaintiff had an informational-privacy interest in the personal information Defendant represented it did not collect. *Folgelstrom v. Lamps Plus, Inc.*, is similarly inapposite, as there, the retailer did not affirmatively represent it did not collect such information. *Compare Folgelstrom*, 195 Cal. App. 4th 986; *with In re Facebook* 956 F.3d at 601; *Krzyzek*, 817 F. Supp. 3d at 865; *Motorola*, 2025 WL 1939957, at *10; *Spring Fertility*, 2026 WL 1483490, at *2.

## CONCLUSION

For the reasons set forth above, Plaintiff French respectfully requests the Court deny Defendant United Legwear's motion to dismiss in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff seeks leave to amend the Complaint.

Dated: August 20, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ Philip L. Fraietta
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*