**NORTON ROSE FULBRIGHT US LLP**
JEFFREY MARGULIES (BAR NO. 126002)
EVA YANG (BAR NO. 306215)
NICOLE ZELADA (BAR NO. 352584)
1 Embarcadero Center, Suite 1050
San Francisco, California 94111
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
jeff.margulies@nortonrosefulbright.com
eva.yang@nortonrosefulbright.com
nicole.zelada@nortonrosefulbright.com

Attorneys for Defendant
UNITED LEGWEAR COMPANY, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZACHARY BABKA and DENISE FRENCH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ST IP HOLDINGS LP and UNITED LEGWEAR COMPANY, LLC d/b/a UNITED LEGWEAR & APPAREL CO.<br><br>Defendants. | Case No. 4:26-cv-01702-JST<br><br>Hon. Jon S. Tigar<br><br>**DEFENDANT UNITED LEGWEAR COMPANY, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF DENISE FRENCH'S FIRST AMENDED COMPLAINT**<br><br>**DATE:** December 10, 2026<br>**TIME:** 2:00 p.m.<br>**COURTROOM:** 6 - 2nd Floor |

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ... 5

I. INTRODUCTION ... 5

II. PLAINTIFF DOES NOT PLAUSIBLY ALLEGE THAT FRENCH WITHHELD OR LIMITED HER CONSENT. ... 6

III. THE WIRETAP ACT CLAIM DOES NOT PLAUSIBLY ALLEGE AN INDEPENDENT CRIMINAL OR TORTIOUS PURPOSE. ... 7

IV. THE SECTION 632 CLAIM FAILS BECAUSE DEFENDANT CANNOT BE HELD DERIVATIVELY LIABLE AND NO CONFIDENTIAL COMMUNICATION IS ALLEGED ... 10

V. THE SECTION 638.51 CLAIM DOES NOT IDENTIFY ANY PEN-REGISTER INFORMATION ACTUALLY COLLECTED FROM FRENCH ... 12

VI. THE CONSTITUTIONAL PRIVACY CLAIM ALLEGES NEITHER A REASONABLE EXPECTATION OF PRIVACY NOR A SERIOUS INVASION ... 12

VII. CONCLUSION ... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 9

*In re Eastport Assocs.*,
935 F.2d 1071 (9th Cir. 1991) .......... 10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 12, 13, 14

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 11

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 7

*Hill v. NCAA*,
7 Cal.4th 1 (1994) .......... 14

*J.S. v. Spring Fertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026) .......... 6, 8, 9, 10

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) .......... 9

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) .......... 12

*Perez v. Romantix Online, Inc.*,
2026 WL 1802589 (N.D. Cal. June 23, 2026) .......... 6, 7

*In re Point Ctr. Fin., Inc.*,
2016 WL 11723668 (C.D. Cal. 2016) .......... 13

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 9

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 11

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 10

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) .......... 13

*Silva v. U.S. Bancorp*,
2011 WL 7096576 (C.D. Cal. 2011) .......... 13

*Smith v. Rack Room Shoes, Inc.,*
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 9

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 9, 11

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 8

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 7

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025) .......... 13

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 9

**Rules and Statutes**

18 U.S.C. § 2511(2)(d) .......... 7

Cal. Penal Code § 31 .......... 10

Cal. Penal Code § 631 .......... 12

Cal. Penal Code § 632 .......... 5, 10, 11

Cal. Penal Code § 638.51 .......... 5, 12

Fed. R. Civ. Proc. 8 .......... 5, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The First Amended Complaint alleges that electronic communications between visitors and the Stance website were intercepted or recorded by advertising technology provided by Meta Platforms, Inc. or Google, LLC and further alleges that the website's cookie banner made representations about disclosure of personal information that United Legwear allegedly failed to honor. Yet, the FAC fails to allege the facts that matter: what are ***Denise French's*** interactions with the website and how did ***she*** interact with the cookie banner? The FAC asserts liability on the assumptions that (1) she read the cookie banner, (2) interacted with it, and (3) then observed a disclosure that is only visible to users who clicked "Preferences" (i.e., that targeting cookies "do not store directly personal information"), but fails to plead such facts.

Because she does not allege that she saw the one disclosure that supposedly limited her consent, created a privacy expectation, and deceived her, most of plaintiff's cited cases are inapposite, as they involved users who actually read disclosures that created an expectation of privacy. Those cases only underscore what French does not plead: allegations that the plaintiff read or accepted a privacy statement, opted out, continued browsing, or disclosed sensitive information. French alleges none of that, and the opposition does not attempt to argue otherwise.

The remaining defects are just as clear. The Wiretap Act claim alleges only ordinary commercial purposes—analytics, advertising, marketing, and profit—not an independent criminal or tortious purpose. The section 632 claim asserts derivative liability the statute does not permit and identifies no confidential communication. The section 638.51 claim does not allege that French's routing or addressing information was collected. And the constitutional claim identifies no protected privacy interest, reasonable expectation of privacy, or egregious conduct arising from buying socks on a public retail website.

Rule 8 does not allow a plaintiff to replace facts about her own experience with pure speculation about what tracking technology might do to other website visitors. The FAC should therefore be dismissed.

## II. PLAINTIFF DOES NOT PLAUSIBLY ALLEGE THAT FRENCH WITHHELD OR LIMITED HER CONSENT.

Plaintiff's opposition never responds to the central point of the motion: the FAC does not allege facts showing what French saw, what she did, or what—if anything—she withheld, limited, or revoked. Without any such specific allegations, she cannot claim that there is a reasonable expectation of privacy from the cookie banner or that her claims are adequately pled.

First, French misses the point by citing to case law regarding the scope and effectiveness of consent. French argues that consent must explicitly notify users of the practice at issue and the alleged conduct cannot exceed the scope of the consent. Opposition at 3. But plaintiff needs to first allege details regarding her ***own*** experience to determine whether it adequately notified her of the conduct that she complains. This omission is fatal, particularly as plaintiff's theory depends on language that does not appear in the initial cookie banner. For example, plaintiff argues that her "allegations arise from the reasonable expectation Defendant created, by warranting targeting cookies 'do not store directly personal information . . . irrespective of whether a consumer accepts or rejects [them]' and then exceeding the scope of that consent[.]" Opposition at 4. However, the statement that targeting cookies "do not store directly personal information" appears ***inside*** the cookie-preferences interface, which a user can access only by selecting "Preferences." FAC ¶¶ 29-30, Figs. 3-4. French never alleges that she opened that interface, saw or read the statement, toggled any cookie category, or selected "Accept," "Decline," or any comparable option.

*Spring Fertility* does not excuse that pleading failure. There, the court considered whether the defendant's disclosures objectively conflicted as to how information would be shared. *J.S. v. Spring Fertility Holdings, LLC*, 2026 WL 1483490 at *2-*3 (N.D. Cal. May 27, 2026). It did not hold that a plaintiff may rely on language inside an optional interface without alleging that she opened or encountered it. Before the Court can determine what a disclosure communicated, plaintiff must plausibly allege she saw the disclosure. *Perez v. Romantix Online, Inc.*, 2026 WL 1802589 (N.D. Cal. June 23, 2026), illustrates the defect. Plaintiff attempts to distinguish *Perez* because the complaint there initially failed to allege that the named plaintiffs "did not consent." Opp. at 5. But this language, which is plaintiff's sole basis for distinguishing *Perez*, refers to the trial court's prior

dismissal of the complaint. *Perez*, 2026 WL 1802589, at *2. After dismissal, the plaintiff amended his complaint to add exactly that allegation, and the court still held that he "must do more than merely assert" nonconsent. *Id.* Although the plaintiff also alleged that he eventually selected "Decline All," his claims remained deficient because he did not allege when he made that selection or whether he continued browsing afterward. *Id.* at *2-*3. French alleges even less: she does not allege that she selected any option at any time or at any way interact with the cookie banner. Repeating the words "did not consent" in conclusory fashion throughout the FAC does not supply those missing facts.

*Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025), actually supports United Legwear's position by confirming what sufficient allegations are. There, unlike here, the plaintiff specifically alleged that he opened the consent-management tool, selected "Reject All," and continued to experience the challenged tracking. *Id.* at *1. Those concrete allegations permitted the court to evaluate whether the collection disregarded the plaintiff's expressed choice. French alleges none of them. The FAC therefore must be dismissed in its entirety.

## III. <u>THE WIRETAP ACT CLAIM DOES NOT PLAUSIBLY ALLEGE AN INDEPENDENT CRIMINAL OR TORTIOUS PURPOSE.</u>

The Wiretap Act claim fails for two related reasons. As explained above, the FAC does not plausibly allege that French withheld or limited her consent. And because United Legwear was a party to communications directed to its own website, its consent independently triggers the Wiretap Act's party exception unless the communications were intercepted for the purpose of committing a criminal or tortious act. 18 U.S.C. § 2511(2)(d). That exception requires an intended crime or tort separate from the alleged interception itself. *See Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999).

The opposition argues that plaintiff satisfied such requirement merely by relabeling the alleged interception as an "invasion of privacy." That is all the FAC does. Paragraph 226 recites in a conclusory fashion that United Legwear acted for "unlawful and tortious purposes," including "invasion of privacy," associating communications with preexisting profiles, and using communications in a manner exceeding its representations. But the FAC's concrete allegations

identify only ordinary commercial purposes: United Legwear allegedly incorporated tracking technologies for "marketing, advertising, and analytics purposes" (FAC ¶ 14); used Meta's services to run advertisements (*id.* ¶ 99); and employed Google advertising products intended to deliver relevant advertisements, (*id.* ¶ 144). Elsewhere, the FAC alleges that the information was "monetized" through targeted advertising. *Id.* ¶ 223. None of those allegations identifies an independent crime or tort. The opposition's observation that profit and tortious conduct can coexist is beside the point. A financial motive does not immunize an otherwise adequately alleged tort, but neither does it create one.

Plaintiff's generalized descriptions of Meta's and Google's technologies do not fill that gap. The FAC does not plausibly allege that French's communications were incorporated into an existing consumer profile that was used by United Legwear, or that French received targeted advertisements following her visit. Although receipt of an advertisement is not itself an element of the exception, the absence of that or any comparable plaintiff-specific allegation underscores that plaintiff has alleged only what these technologies may do generally—not what was done with French's information or for what intended use. Here, plaintiff's allegations are mere recitations of the elements of a claim, which need not be accepted as true. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Nor does the FAC plausibly allege that any advertising use exceeded United Legwear's representations. The cookie banner pop-up that French was allegedly confronted with stated that the Website "uses cookies[.]" FAC ¶ 29, Fig. 3. The same Preferences interface plaintiff invokes expressly disclosed that targeting cookies may be used to build profiles of users' interests and display relevant advertisements, and that declining those cookies would result in less targeted advertising. *Id.* ¶ 30, Fig. 4. As French does not allege that she opened that interface, read its disclosures, declined targeting cookies, or selected any preference, plaintiff cannot manufacture an independent privacy tort by asserting that United Legwear did something different from what it "promised."

Plaintiff's reliance on *Spring Fertility* elsewhere in the opposition only highlights the deficiency. The court there dismissed the ECPA claim because the complaint merely recited the

crime-tort exception while its factual allegations identified only targeted advertising and financial gain. *Spring Fertility Holdings*, 2026 WL 1483490, at *3. That was insufficient even though the case involved confidential fertility and medication information. *Id.* The same result follows more readily here, where French alleges only an ordinary retail transaction involving socks. *See also Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 896 (S.D. Cal. 2025) (allegations that website information was collected for advertising and marketing did not plausibly invoke the crime-tort exception).

*Smith v. Rack Room Shoes, Inc.* ("*Smith II*") likewise does not hold that invoking "targeted advertising" is enough. 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025). There, the plaintiffs specifically alleged that their personally identifiable browsing and purchase histories were incorporated into consumer profiles, returned to Rack Room, and knowingly used by Rack Room to guide targeted advertisements. *Id.* at *4-*5. In the prior complaint, plaintiffs also alleged that they accepted the privacy policy at issue. *Smith v. Rack Room Shoes, Inc.* ("*Smith I*"), 2025 WL 1085169, at *2 (N.D. Cal. Apr. 4, 2025). They also alleged that this downstream use directly contradicted a privacy policy that did not disclose personally identifiable collection, profile building, or third parties' independent commercial use. *Smith II*, 2025 WL 2210002, at *4-*5. Here, by contrast, the FAC describes the operation of advertising technologies generally without plausibly alleging that this sequence occurred as to French or that French received targeted advertising, while the Preferences interface expressly disclosed the very profile building and targeted advertising plaintiff now characterizes as tortious.

Plaintiff's remaining authorities are similarly distinguishable. Those cases involved private information or sensitive health information. Opp. at 6 (citing *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021); *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024); *R.C. v. Walgreen Co.* 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024)). While several decisions from the Northern District of California have reasoned that the crime-tort exception is inapplicable where, defendant's primary motivation was to make money, "[t]he picture is murkier if a defendant is capturing health information on a website." *Zarif*, 789 F. Supp. 3d at 895. An

ordinary purchase of socks does not implicate those decisions involving sensitive health information in which courts found that the crime-tort exception applied.

Nor is *Riganian* analogous. There, the defendant was a registered data broker whose business consisted of tracking consumers with whom it had no direct relationship, combining extensive online and offline information into persistent identity profiles, and preparing those profiles for sale through its data marketplace. *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1080-81 (N.D. Cal. 2025). This Court therefore found a specifically alleged purpose to associate the plaintiffs' information with existing identity profiles and sell the resulting data. *Id.* at 1090-91. That bears no resemblance to United Legwear's direct retail relationship with French or the disclosed use of cookies to sell socks. Because the FAC alleges no independent criminal or tortious intended use, the party exception applies and Count I should be dismissed.

## IV. THE SECTION 632 CLAIM FAILS BECAUSE DEFENDANT CANNOT BE HELD DERIVATIVELY LIABLE AND NO CONFIDENTIAL COMMUNICATION IS ALLEGED

French repeatedly urges this Court to follow *Spring Fertility* (*see* Opp. at 4), yet conspicuously ignores that decision's holding on section 632. The court dismissed the section 632 claim without leave to amend because "there is no derivative liability under this section[.]" *Spring Fertility Holdings, LLC*, 2026 WL 1483490, at *5-*6. It rejected the same argument plaintiff advances here—that Penal Code section 31 imports criminal aiding-and-abetting principles into a civil section 632 action—because section 31 applies in criminal cases, no binding or persuasive authority extends it to civil claims, and statutes should be construed to give their terms meaning and effect, avoiding interpretive construction. *Id.* (citing *In re Eastport Assocs.*, 935 F.2d 1071, 1080 (9th Cir. 1991)). Further, the plaintiff in *Spring Fertility*, like French, did not plead derivative liability under section 31 in the FAC, which further warranted dismissal. *See id.* Although there is seemingly a split amongst the district courts regarding whether section 632 imposes derivative liability, the better interpretation of section 632 is that advanced by the court in *Spring Fertility*, as the plain language of the statute makes clear that section 632 does not extend to aiding and abetting theories.

But even if it did, the claim still fails because French does not plausibly allege a confidential communication. Section 632 requires an objectively reasonable expectation that the communication was not being overheard or recorded. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002). Plaintiff's response that there is no categorical "Internet exception" misses the point. United Legwear does not need such a categorical rule; French must allege facts making ***her*** particular communications confidential. It is unclear how her communications are confidential let alone what the allegedly intercepted communications even are, as plaintiff merely vaguely refers to her "online shopping session." Opposition at 9 (emphasis in original). Regardless, her theory again depends on language inside the Preferences interface stating that targeting cookies "do not store directly personal information." FAC ¶ 30, Fig. 4. Again, French cannot say she had a reasonable expectation of privacy regarding her "online shopping session" if she never alleges that she saw the cookie banner.

*Smith I* only confirms this. There, each plaintiff had accepted Rack Room's privacy policy, which the court found could be read to promise that third parties would not intercept or use personally identifiable browsing and purchase information. *Smith I*, 2025 WL 1085169, at *2. Here, by contrast, French does not allege any of those details and the interface containing that language also disclosed that targeting cookies could build interest profiles and display relevant advertisements. The FAC's bare assertion that French expected confidentiality cannot substitute for those missing facts.

Without a representation French actually encountered, this case falls within the ordinary rule applied to online retail activity. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (noting the presumption that internet communications do not reasonably give rise to an expectation of privacy, and shopping for clothing on a retail website did not warrant departing from that rule). French alleges only that she browsed and purchased socks on a public retail website—not that she used a protected browsing mode, communicated sensitive information, or took any step indicating that she expected her activity would not be recorded. Because section 632 does not impose derivative liability and the FAC does not allege a confidential communication, Count III should be dismissed.

## V. THE SECTION 638.51 CLAIM DOES NOT IDENTIFY ANY PEN-REGISTER INFORMATION ACTUALLY COLLECTED FROM FRENCH

Plaintiff's opposition centers around an argument United Legwear did not make. United Legwear does not contend that sections 631 and 638.51 claims can never coexist, or that a technology ceases to qualify as a pen register merely because it also collects content. The defect is that the FAC does not plausibly allege that any technology collected qualifying dialing, routing, addressing, or signaling information from French. (*See* Motion at 15). As *Mitchener* explains, the statute distinguishes between "information ***about*** a communication [and] information ***within*** a communication." *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 852 (N.D. Cal. 2025) (emphasis in original). Information supplied directly by a plaintiff to a website—including transactional and biographical information—is content, not pen-register information. *Id.* at 851-52.

The opposition cites allegations concerning Meta's and Google's collection of IP addresses and device metadata generally. Opp. at 11-13. But the allegations specific to French identify only her name, email address, partial physical address, item and price information, and purchase- or payment-event details. FAC ¶¶ 174-77, Figs. 11-12. Neither figure depicts an IP address or device metadata, and the FAC does not allege when, how, or through which technology any such information was collected from French. Paragraphs asserting generally that "Plaintiffs and Class Members" had IP addresses or device metadata collected merely repeat the statutory theory; they do not supply the missing plaintiff-specific facts. Rule 8 does not require source-code pleading, but it still requires facts supporting a plausible claim. Because the FAC identifies no pen-register information actually collected from French, Count IV should be dismissed.

## VI. THE CONSTITUTIONAL PRIVACY CLAIM ALLEGES NEITHER A REASONABLE EXPECTATION OF PRIVACY NOR A SERIOUS INVASION

Plaintiff begins with an incomplete statement of the governing law. She identifies only a reasonable expectation of privacy and a highly offensive intrusion, relying on *In re Facebook*'s combined discussion of constitutional invasion of privacy and common-law intrusion upon seclusion. Opp. at 12. But *In re Facebook* first makes clear that a constitutional claim requires three threshold elements: (1) a "legally protected privacy interest," (2) a "reasonable expectation of

privacy," and (3) an "intrusion [that] is 'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). The fact that courts sometimes analyze the overlapping constitutional and common-law claims together does not eliminate the first, distinct element. As plaintiff fails to make any argument regarding the first element, she concedes it, requiring dismissal of this claim on this basis alone. *In re Point Ctr. Fin., Inc*., 2016 WL 11723668, *2 n. 1 (C.D. Cal. 2016) ("A party can waive an argument by failing to raise it in their opposition to a motion to dismiss."); *Silva v. U.S. Bancorp*, 2011 WL 7096576, *3 (C.D. Cal. 2011) (ruling that plaintiff's failure to respond in his opposition brief to defendants' argument in motion to dismiss amounted to a concession).

Plaintiff nonetheless fails to allege a reasonable expectation of privacy. Her theory again depends entirely on the statement that targeting cookies "do not store directly personal information." As discussed above, she does not allege that she saw this representation. That is precisely why *Thomas* and similar cases remain persuasive: activity on a public commercial website ordinarily carries no reasonable expectation of privacy absent specific facts establishing one. *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *1-*2 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025).

Plaintiff fares no better on the serious-invasion element. She relies on *Shah* for the proposition that deceit may be a "plus factor" in determining whether conduct is highly offensive. Opp. at 13-14 (citing *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 917 (N.D. Cal. 2026)). But French could have been deceived by the statement at issue only if she actually saw it. And *Shah* involved far more: the plaintiffs alleged that they understood their choice to opt out, expressly opted out of any collection of personal information for targeted advertising, and nevertheless were tracked; they also alleged the collection of potentially sensitive information concerning calorie intake, exercise, and health and fitness goals. *Id.* at 916-17. Here, French does not allege that she opted out of tracking (let alone read any statement pertaining to targeting cookies), and the ordinary purchase information of socks is not remotely comparable. Deceit is therefore not a "plus factor"

here, and the FAC supplies no other facts making the alleged collection an egregious breach of social norms.

In short, French's authority regarding websites containing affirmative representation and failure to honor those representations is inapposite. *See, e.g., In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 602 (9th Cir. 2020) ("Plaintiffs have plausibly alleged that, ***upon reading*** Facebook's statements in the applicable Data Use Policy, a user might assume that only logged-in user data would be collected") (emphasis added). Similarly, plaintiff's attempt to distinguish cases cited by United Legwear on the same basis is unpersuasive. And, plaintiff's assertion that she had "an informational-privacy interest in the personal information Defendant represented it did not collect" is circular. Opp. at 14. A representation may bear on whether a plaintiff reasonably expected privacy, but it does not establish that the information itself falls within a legally protected class. Under *Hill*, information is constitutionally private when "well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Hill v. NCAA*, 7 Cal.4th 1, 35 (1994). The FAC alleges, at most, the collection of hashed contact information and routine transactional data associated with an ordinary online purchase of socks. It identifies no medical information, intimate personal decision, confidential communication, or comparable information whose disclosure could cause "unjustified embarrassment or indignity." These allegations are a far cry from establishing a privacy claim.

## VII. CONCLUSION

For the foregoing reasons, defendant United Legwear respectfully requests that the Court grant its motion and dismiss the FAC in its entirety.

Dated: August 27, 2026

**NORTON ROSE FULBRIGHT US LLP**
JEFFREY MARGULIES
EVA YANG
NICOLE ZELADA

By *[/s/ Eva Yang]*
EVA YANG
Attorney for Defendant
UNITED LEGWEAR COMPANY, LLC